No. 22-1734

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

JASON SMITH,

Plaintiff-Appellant,

v.

CITY OF CHICAGO, KARLO FLOWERS,
SYDNEY ROBERTS, and JAMES
MURPHY-AGUILU,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division
No. 18-cv-08075
The Honorable Gary Feinerman, Presiding

————

BRIEF OF DEFENDANTS-APPELLEES

————

Corporation Counsel
  of the City of Chicago
2 N. LaSalle Street, Suite 580
Chicago, Illinois 60602
(312) 744-2497

MYRIAM ZRECZNY KASPER
  Deputy Corporation Counsel
SUZANNE M. LOOSE
  Chief Assistant Corporation Counsel
ETHAN MEREL
  Assistant Corporation Counsel
  Of Counsel

# TABLE OF CONTENTS

————

**Page**

TABLE OF AUTHORITIES ........................................................................ii

JURISDICTIONAL STATEMENT ........................................................ 1

ISSUES PRESENTED ............................................................................ 1

STATEMENT OF THE CASE ............................................................... 2

SUMMARY OF ARGUMENT................................................................ 8

ARGUMENT .......................................................................................... 9

I.      SUMMARY JUDGMENT WAS PROPER ON SMITH'S RETALIATION CLAIMS........................................................... 10

II.     SUMMARY JUDGMENT WAS PROPER ON SMITH'S DEFAMATION CLAIM........................................................... 16

    A.      Flowers Made No Statement to TSA............................... 17

    B.      Murphy-Aguilu's Statement to TSA Was True.............. 17

    C.      Murphy-Aguilu's Statement Was Conditionally Privileged. ..... 19

    D.      Murphy-Aguilu Is Immune From Liability For His Response to TSA. ................................................................ 21

III.    SUMMARY JUDGMENT WAS PROPER ON SMITH'S INDEMNIFICATION CLAIM........................................................ 22

CONCLUSION ...................................................................................... 23

# TABLE OF AUTHORITIES

———

**CASES**                                                                    **Page(s)**

Allen-Noll v. Madison Area Technical College,
    969 F.3d 343 (7th Cir. 2020) ............................................................................. 10

Bachenski v. Malnati,
    11 F.3d 1371 (7th Cir. 1993) ............................................................................. 23

Cary v. Northeast Illinois Regional Commuter Railroad Corp.,
    No. 19 C 03014, 2020 WL 1330654 (N.D. Ill. Mar. 22, 2020) ......................... 11

Cianci v. Pettibone Corp.,
    298 Ill. App. 3d 419 (1st Dist. 1998) ................................................................ 18

Delloma v. Consolidation Coal Co.,
    996 F.2d 168 (7th Cir. 1993) ............................................................................. 20

Driveline Systems, LLC v. Arctic Cat, Inc.,
    936 F.3d 576 (7th Cir. 2019) ............................................................................. 10

E.E.O.C. v. Concentra Health Service, Inc.,
    496 F.3d 773 (7th Cir. 2007) ............................................................................. 15

Global Relief Foundation, Inc. v. New York Times Co.,
    390 F.3d 973 (7th Cir. 2004) ........................................................................ 18-19

Green v. Rogers,
    234 Ill. 2d 478 (2009) .................................................................................. 16-17

Hansen v. Runyon,
    No. 97 C 3672, 1999 WL 311693 (N.D. Ill. May 13, 1999) ............................. 15

Haynes v. Alfred A. Knopf, Inc.,
    8 F.3d 1222 (7th Cir. 1993) ............................................................................... 17

Horwitz v. Board of Education of Avoca School District No. 37,
    260 F.3d 602 (7th Cir. 2001) ........................................................................ 21-22

Igasaki v. Illinois Department of Financial & Professional Regulation,
    988 F.3d 948 (7th Cir. 2021) ............................................................................. 11

Illinois Native American Bar Association v. University of Illinois,
        368 Ill. App. 3d 321 (1st Dist. 2006)................................................................ 11

Kidwell v. Eisenhauer,
        679 F.3d 957 (7th Cir. 2012)............................................................................. 14

Klug v. Chicago School Reform Board of Trustees,
        197 F.3d 853 (7th Cir. 1999)............................................................................. 21

Kuwik v. Starmark Star Marketing & Administration, Inc.,
        156 Ill. 2d 16 (1993) .................................................................................... 19-20

Mauvais-Jarvis v. Wong,
        2013 IL App (1st) 120070.................................................................................. 19

Miller v. American Family Mutual Insurance Co.,
        203 F.3d 997 (7th Cir. 2000)............................................................................. 12

Muzikowski v. Paramount Pictures Corp.,
        322 F.3d 918 (7th Cir. 2003)............................................................................. 16

O'Grady v. Village of Libertyville,
        304 F.3d 719 (7th Cir. 2002)............................................................................. 15

Parker v. Brooks Life Science, Inc.,
        39 F.4th 931 (7th Cir. 2022) ............................................................................. 13

Quinn v. Jewel Food Stores, Inc.,
        276 Ill. App. 3d 861 (1st Dist. 1995)................................................................ 20

Reid v. Neighborhood Assistance Corporation of America,
        749 F.3d 581 (7th Cir. 2014)............................................................................. 13

Robinson v. Perales,
        894 F.3d 818 (7th Cir. 2018)............................................................................. 11

Tomanovich v. City of Indianapolis,
        457 F.3d 656 (7th Cir. 2006)............................................................................. 12

Towns v. Yellow Cab Company,
        73 Ill. 2d 113 (1978) ......................................................................................... 23

University of Texas Southwestern Medical Center v. Nassar,
        570 U.S. 338 (2013)...................................................................................... 12-13

<u>Washington v. American Stores Co.</u>,
    No. 98 C 1439, 1999 WL 966092 (N.D. Ill. Oct. 14, 1999),
    <u>aff'd</u>, 234 F.3d 1275 (7th Cir. 2000) ................................................... 14

<u>Weaver v. Champion Petfoods USA Inc.</u>,
    3 F.4th 927 (7th Cir. 2021) ...................................................................... 16

<u>Weiler v. Village of Oak Lawn</u>,
    86 F. Supp. 3d 874 (N.D. Ill. 2015) ........................................................ 11

<u>Zych v. Tucker</u>,
    363 Ill. App. 3d 831 (1st Dist. 2006) ..................................................... 20

## OTHER AUTHORITIES

28 U.S.C. § 1291 ................................................................................................... 1

28 U.S.C. § 1331 ................................................................................................... 1

28 U.S.C. § 1367(a) ............................................................................................. 1

42 U.S.C. § 2000e <i>et seq.</i> ...................................................................................... 1

42 U.S.C. § 2000e-2(a)(1) ................................................................................. 10

42 U.S.C. § 2000e-3(a) ...................................................................................... 10

740 ILCS 23/1 <i>et seq</i>............................................................................................. 1

740 ILCS 23/5(a)(1) ........................................................................................... 10

745 ILCS 10/2-109 ............................................................................................ 23

745 ILCS 10/2-210 ............................................................................................ 21

<u>Restatement (Second) of Torts</u> § 595 .......................................................... 20

v

## JURISDICTIONAL STATEMENT

————

The jurisdictional statement of plaintiff-appellant Jason Smith is not complete and correct.

On August 21, 2020, Smith filed an amended complaint against the City of Chicago and three City employees – Sydney Roberts, Karlo Flowers, and James Murphy-Aguilu – alleging that the City violated his rights under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* and the Illinois Civil Rights Act ("ICRA"), 740 ILCS 23/1 *et seq*., that the individual defendants defamed him under Illinois state law, and other state-law claims.  R. 227.  The district court had jurisdiction over Smith's claims pursuant to 28 U.S.C. §§ 1331 and 1367(a).

On February 9, 2021, the district court granted in part and denied in part the defendants' motion to dismiss, including dismissing all claims against Roberts. R. 284.  On March 30, 2022, the district court granted summary judgment for the defendants on all remaining claims, see Appendix 1-19; R. 341, and entered final judgment pursuant to Fed. R. Civ. P. 58, R. 342.  Smith filed a notice of appeal on April 28, 2022, "from [the] Memorandum Opinion and Order entered on March 30, 2022," which granted summary judgment.  R. 347.

This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED

———

1.    Whether the district court correctly granted summary judgment to the City on Smith's retaliation claims.

2.      Whether the district court correctly granted summary judgment to Flowers and Murphy-Aguilu on Smith's defamation claim.

3.      Whether the district court correctly granted summary judgment to the City on Smith's indemnification claim.

## STATEMENT OF THE CASE

―――――

Jason Smith, a former probationary investigator for the City's Civilian Office of Police Accountability ("COPA"), filed this lawsuit against the City and COPA employees Flowers and Murphy-Aguilu.  He alleged that the City violated his rights under Title VII and ICRA by retaliating against him for filing a charge with the Illinois Department of Human Rights ("IDHR") against the Office of the Chief Judge of the Circuit Court of Cook County ("OCJ"); that Flowers and Murphy-Aguilu defamed him; and that the City is required to indemnify Flowers and Murphy-Aguilu.

The parties adduced the following evidence during discovery.  In April 2003, Smith began working as a juvenile probation officer for OCJ.  R. 309-2 at 63.  While at OCJ, Smith served in the leadership of his union, AFSCME Local 3477.  R. 309-2 at 118.  In July 2016, Smith filed a charge with the IDHR against OCJ, which involved the denial of his request for an adjusted work schedule.  R. 325 at ¶ 58.  After filing the charge, Smith applied for other employment opportunities.  See, e.g., R. 330 at ¶ 5; R. 330-1 at 1.  On January 23, 2018, Annette Moore, the then-Chief of Staff of COPA, offered Smith a position as a COPA investigator.  R. 309-2 at 102-03.  Smith accepted the job that same day.  R. 309-2 at 104.

On January 31, 2018, COPA instructed Smith to report for his new hire orientation on February 16, 2018.  R. 309-3 at 129.  On February 1, 2018, Smith emailed Avik Das, OCJ's Director of Probation and Court Services, to request an "educational leave" starting the week of February 13, 2018 through August 13, 2018.  R. 309-3 at 13.  Such leave is permitted only for attendance at a "recognized college, university, trade or technical school, or high school," R. 309-3 at 9, and "any gainful employment while on a leave of absence is prohibited," R. 309-2 at 112.  On February 6, 2018, Das approved Smith's leave request and explained that he was "expected . . . [to] return to work full time" following the leave.  R. 309-3 at 9.  On February 8, 2018, Smith informed Chief Judge Timothy Evans by email that he was going on educational leave and that his "official last day . . . will be February 16, 2018" – the same date he was scheduled to begin work at COPA.  R. 309-3 at 8-9.  In that email, Smith also mentioned that a probation officer named Bradley "was granted a ten hour work shift despite the fabricated information created and submitted to the Illinois Human Rights Commission . . . stating [that] no probation officer has ever had a ten hour work shift."  R. 309-2 at 29-30.

On February 16, 2018, Smith began his employment with COPA.  As part of his onboarding process, Smith signed COPA's Conflict of Interest and Recusal Statement, which states that "I understand and acknowledge that I must ***immediately*** disclose to COPA's Ethics Officer, ***in writing*** . . . [a]ny secondary employment (whether or not it relates to police matters or investigations)."  R. 309-2 at 134-35 (emphasis in original).  Smith also received a copy of the COPA Employee

Policy Handbook, which states both that "[o]utside activities and relationships, including but not limited to . . . outside employment . . . must be disclosed to COPA's Ethics Officer," and that "COPA employees must disclose in writing to the Ethics Officer using the Outside Employment Form" any such employment.  R. 309-2 at 150-51.

During his first-day orientation, Smith informed Moore that he was employed part-time as a police officer for the City of Berwyn.  Moore instructed Smith to resign as a Berwyn Police Officer because it constituted a conflict of interest. R. 309-2 at 108.  Smith subsequently resigned from his position as a police officer. R. 309-2 at 89.  Smith also testified that he told Moore that he had "taken an educational leave with Cook County because [he] wasn't sure if [he] was going to continue with COPA."  R. 309-2 at 87.  Smith did not submit the required secondary employment or conflict of interest forms to COPA's Ethics officer indicating that he maintained outside employment with OCJ.  R. 309-2 at 64-65.  Karlo Flowers, the then-Director of Administrative Services for COPA, stated in his sworn declaration that if Smith had submitted the forms, "I would have advised him that such employment posed a direct conflict with his employment at COPA."  R. 309-2 at 8.

Smith claims that following his conversation with Moore on February 16, 2018, he drafted a resignation letter to OCJ's Human Resources Director, William Patterson, and mailed it that same day.  R. 323-6; R. 309-2 at 87-88.  OCJ denies that it received a resignation letter from Smith, R. 309-2 at 115; see also R. 325 at ¶ 18, and Smith did not obtain confirmation that OCJ received his letter, R. 309-2

4

at 88-89.  Smith also did not participate in an exit interview or receive "anything from Cook County" in response to his purported resignation.  R. 309-2 at 88-89; see also R. 325 at ¶¶ 17-18.[1]  According to OCJ records, Smith remained an OCJ employee until his termination on June 8, 2018.  R. 309-2 at 133.

In June 2018, OCJ learned that Smith was working at COPA while on educational leave, which was prohibited.  R. 309-2 at 112.  To confirm whether Smith was working for COPA, Katherine Verrant, OCJ's Labor and Employment Relations Counsel, contacted Flowers.  R. 309-2 at 112.  On June 7, 2018, Flowers sent Verrant a memo which verified that Smith was "employed full-time as an Investigator with the City of Chicago – Civilian Office of Police Accountability since February 16, 2018."  R. 309-2 at 27.  Flowers also requested from Verrant a "copy of any relevant information or charge" that the OCJ might file "so that we can determine if any action is warranted" by COPA as well.  R. 309-2 at 22.

On June 8, 2018, OCJ terminated Smith's employment due to his engagement "in gainful employment while on an authorized leave of absence."  R. 309-2 at 26.  Smith was issued benefits termination information following his termination, of which he confirmed receipt later that month.  R. 309-2 at 133; R. 309-2 at 64.

On June 11, 2018, Verrant emailed Flowers a copy of the Notice of Termination letter that she had sent Smith.  R. 309-2 at 22.  One of the documents

---

[1]  The only response to his resignation Smith claims he received was a notice of the "termination of [his] benefits" in March 2018, R. 309-2 at 89, but the document to which he refers is unreadable, see R. 323-10, and thus does not indicate whether it relates to his supposed resignation, as opposed to his educational leave of absence.

enclosed with the letter was the email chain from February 1, 2018 through February 8, 2018, in which Smith requested the educational leave and stated that the leave was the basis for his February 16, 2018 departure from OCJ. R. 309-2 at 22-34. Verrant testified that the only individuals she spoke with at the City regarding Smith were Flowers and Christopher Owens, First Deputy Commissioner of the Department of Human Resources. R. 309-2 at 114-15. Verrant testified that she did not inform Flowers or any City employee that Smith had ever engaged in protected activity against OCJ, including the filing of a discrimination lawsuit, an IDHR charge, or an EEOC charge. R. 309-2 at 115. Flowers likewise testified that Verrant never informed him of any complaint of discrimination that Smith may have made against OCJ. R. 309-2 at 10; R. 309-2 at 54. Flowers did not speak about Smith with anyone else at OCJ or Cook County. R. 309-2 at 54.

After learning from Verrant that OCJ terminated Smith for maintaining employment while on a leave of absence, Flowers believed that Smith's conduct also violated COPA's policies and core principles, and he drafted a termination letter. R. 309-2 at 10. Flowers then presented the information that he had learned from Verrant to COPA Chief Administrator Sydney Roberts. R. 309-2 at 5; R. 309-2 at 10. Based on the information Flowers provided, Roberts determined that Smith had violated COPA's conflict of interest and outside employment policies, as well as "COPA's core principles of honesty, integrity and transparency." R. 309-2 at 5. As a result, Roberts made the decision to terminate Smith's employment with COPA, and she executed the draft termination letter Flowers had prepared. R. 309-2 at 5.

6

Roberts never spoke with anyone from OCJ, nor did she review any document provided by OCJ, before deciding to terminate Smith's employment with COPA. R. 309-2 at 6.

Flowers stated that at the time he presented the information to Roberts regarding Smith's leave of absence from OCJ, he had no knowledge that Smith might have engaged in legally protected activity while employed by OCJ, including the filing of any lawsuit, IDHR charge, or EEOC charge. R. 309-2 at 10. Similarly, Roberts stated that at the time she made the decision to terminate Smith's employment with COPA, she had no knowledge that Smith might have engaged in legally protected activity while employed by OCJ, including the filing of any lawsuit, IDHR charge, or EEOC charge. R. 309-2 at 6.

On June 22, 2018, Flowers met with Smith and informed him that he was being terminated for violating COPA's policies due to his employment with OCJ. R. 309-2 at 11. On the same day, Roberts sent the termination letter to Smith, which stated that his "employment as a Probationary At-Will employee with the City of Chicago, Department of Civilian Office of Police Accountability will be terminated effective today, June 22, 2018." R. 309-2 at 6.

After his termination, Smith applied for a position at the United States Transportation Security Administration ("TSA"). R. 309-3 at 71. In connection with his application, Smith executed a TSA Authorization for Release of Information form, which "authorize[d] the custodian of records and other sources of information pertaining to me to release such information upon request of TSA." R. 309-3 at 72.

On November 21, 2018, a TSA representative emailed Murphy-Aguilu – Smith's direct supervisor at COPA – to verify certain information about Smith's previous employment with the City, including "any derogatory circumstances surrounding his separation." R. 309-3 at 71; R. 309-2 at 56. Murphy-Aguilu responded that "my understanding is [Smith] was terminated" because "he had failed to disclose secondary employment, however, please refer to Karlo Flowers if you need a more detailed description of the termination." R. 309-3 at 73. This response was Murphy-Aguilu's only communication with anyone at TSA about Smith. R. 309-2 at 57. Flowers never communicated with anyone at TSA about Smith, nor did he provide any information to TSA about Smith. R. 309-2 at 11, 53. On January 30, 2019, TSA rejected Smith and informed him that he was "ineligible" because his termination from COPA "involved intentionally doing something wrong in the employer's estimation and[ ] indicates your engaged misconduct or negligence may not promote the efficiency or protect the integrity of the service." R. 323-27.

On March 20, 2022, the district court granted the City's motion for summary judgment on all claims that had not previously been dismissed – retaliation, defamation, and indemnification – and entered judgment for the City. R. 341; R. 342. Smith appeals. R. 347.

## SUMMARY OF ARGUMENT

———

Smith violated the policies of both COPA and OCJ when he simultaneously worked for both employers without disclosing or receiving approval for the arrangement. After Smith's scheme of taking an "educational leave" from OCJ to

test-run a different job at COPA was uncovered, both employers terminated his respective employments.  And when Smith thereafter applied for a new position with TSA, it rejected his candidacy upon learning through a routine background check the reason why the City terminated him.  Smith, who lost these employment opportunities due to his own misconduct, instead claims that he experienced retaliation and defamation by the City and its employees.  But as the district court correctly decided in granting the City's motion for summary judgment, no reasonable fact finder could rule in Smith's favor.  His retaliation claim fails because he presented no evidence anyone at the City was aware of his protected activity involving OCJ, let alone that his protected activity caused his termination from COPA.  His defamation claim, which he alleged against Flowers and Murphy-Aguilu, fails because Flowers never communicated with anyone at TSA, and Murphy-Aguilu's statement to TSA was substantially true, protected by a qualified privilege, and shielded by section 2-210 of the Illinois Local Government and Local Governmental Employees Tort Immunity Act.  The judgment should be affirmed.

## ARGUMENT

———

Smith was simultaneously employed by both COPA and OCJ in violation of both employers' policies, which caused him to be terminated from both jobs.  He alleged retaliation and defamation in connection with his termination, but he failed to adduce evidence supporting either claim.  Summary judgment was therefore proper.

This court reviews a grant of summary judgment de novo.  Allen-Noll v.

Madison Area Technical College, 969 F.3d 343, 349 (7th Cir. 2020).  "Summary judgment is appropriate if there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law."  Driveline Systems, LLC v. Arctic Cat, Inc., 936 F.3d 576, 579 (7th Cir. 2019) (quotation omitted); see Fed. R. Civ. P. 56(a).  "A genuine issue of material fact exists whenever there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party."  Driveline Systems, 936 F.3d at 579 (quotation omitted).  Under these standards, the judgment of the district court should be affirmed.

## I.     SUMMARY JUDGMENT WAS PROPER ON SMITH'S RETALIATION CLAIMS.

The district court properly granted summary judgment on Smith's Title VII and ICRA retaliation claim.  No reasonable jury could find that the City retaliated against Smith for engaging in any protected activity.

Title VII makes it unlawful for an employer "to discriminate against any individual . . . because of such individual's race."  42 U.S.C. § 2000e-2(a)(1).  Title VII likewise prohibits retaliating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing."  42 U.S.C. § 2000e-3(a).

Similarly, ICRA prohibits units of state, county, or local government from engaging in "discrimination" on the basis of "race" and other protected categories, 740 ILCS 23/5(a)(1), but there is disagreement whether ICRA creates a cause of action for retaliation, compare Illinois Native American Bar Association v.

University of Illinois, 368 Ill. App. 3d 321, 330 (1st Dist. 2006) (Hoffman, J., concurring) (explaining that ICRA "does not grant a right of action to a person who experiences retaliation") with Weiler v. Village of Oak Lawn, 86 F. Supp. 3d 874, 889-90 (N.D. Ill. 2015) ("conclud[ing] that an individual can bring a claim for retaliation under ICRA"). Those courts that have allowed ICRA retaliation claims to proceed have determined that ICRA and Title VII standards for retaliation are substantively identical. See, e.g., Cary v. Northeast Illinois Regional Commuter Railroad Corp., No. 19 C 03014, 2020 WL 1330654, at *5 (N.D. Ill. Mar. 22, 2020). Here, we assume for present purposes that Smith may bring an ICRA retaliation claim. And because Smith's Title VII and ICRA retaliation claims are based on the same facts and governed by the same legal standards, the summary judgment analysis is the same for both claims.

The central question in any retaliation claim is: "Does the record contain sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused the [adverse action]?" Igasaki v. Illinois Department of Financial & Professional Regulation, 988 F.3d 948, 959 (7th Cir. 2021). This inquiry requires the plaintiff to demonstrate "(1) that he engaged in statutorily protected activity; (2) that his employer took a materially adverse action against him; and (3) that the protected activity and the adverse action are causally connected." Robinson v. Perales, 894 F.3d 818, 830 (7th Cir. 2018). The causation element requires "proof that the desire to retaliate was the but-for cause of the challenged employment action" – i.e., "proof that the unlawful retaliation would not have occurred in the

absence of the alleged wrongful action or actions of the employer." <u>University of Texas Southwestern Medical Center v. Nassar</u>, 570 U.S. 338, 339, 360 (2013).

Smith's retaliation claim fails because he does not present any evidence in support of a causal connection between his IDHR charge filed against OCJ in July 2016 and the termination of his employment with COPA on June 22, 2018. Roberts stated in her sworn declaration, without contradiction, that when she made the decision to terminate Smith's employment, she had no knowledge that Smith may have engaged in protected activity, and she neither spoke with anyone from OCJ nor reviewed any document provided by OCJ. R. 309-2 at 5-6. "[I]f an employer did not know the plaintiff made any complaints, it cannot be trying to penalize him for making them." <u>Tomanovich v. City of Indianapolis</u>, 457 F.3d 656, 669 (7th Cir. 2006) (internal quotation marks omitted); <u>see also</u> <u>Miller v. American Family Mutual Insurance Co.</u>, 203 F.3d 997, 1008 (7th Cir. 2000) (if an employee "never mentions [their protected activity], a claim of retaliation is not implicated, for an employer cannot retaliate when it is unaware of any complaints").

Smith's argument for causation rests on the fact that when Verrant emailed Flowers a copy of Smith's notice of termination from OCJ, the email chain in which Smith announced his "educational leave" was enclosed with the letter. Brief of Plaintiff-Appellant 16 ("Appellant's Br."); R. 309-2 at 22-34. That email chain, in turn, included a passing statement that there was "fabricated information created and submitted to the Illinois Human Rights Commission . . . stating [that] no probation officer has ever had a ten hour work shift," when in fact a probation

officer named Bradley "was granted a ten hour work shift." R. 309-2 at 29-30. This statement, which is completely devoid of any context, does not on its own indicate that Smith filed an administrative charge or complaint regarding race discrimination. Indeed, as the district court reasoned, "the fact that Smith described the information as 'fabricated' conveys that someone else submitted materials to the IHRC, not that Smith himself did so." R. 341 at 14. It is further uncontroverted that Flowers did not understand the email to refer to any complaint or charge that Smith had filed, R. 309-2 at 9, and that no OCJ official had otherwise informed Flowers that Smith had engaged in any protected activity, R. 309-2 at 115; R. 309-2 at 10, 54. Moreover, it was Roberts who made the decision to terminate Smith's employment, not Flowers; and Roberts never received or reviewed the email or any other document provided by OCJ. R. 309-2 at 6. Thus, there is no link between the email and the ultimate decision to terminate Smith. No reasonable jury could find that Roberts knew Smith had engaged in protected activity against OCJ.

In addition, because retaliation requires the protected activity to be the "but-for cause" of the adverse action, University of Texas Southwestern Medical Center, 570 U.S. at 339, causation is not established "where a significant intervening event separates an employee's protected activity from [his] discharge." Parker v. Brooks Life Science, Inc., 39 F.4th 931, 937 (7th Cir. 2022) (internal quotation marks omitted); see also Reid v. Neighborhood Assistance Corporation of America, 749 F.3d 581, 589 (7th Cir. 2014) (a reasonable inference of retaliatory intent does not

exist when "plaintiffs termination was immediately preceded by an intervening event unrelated to their complaints"). As this court has explained, when a "significant intervening event separat[es] an employee's protected activity from the adverse employment action he receives," then "an employee's complaint . . . does not immunize [him] from being subsequently disciplined or terminated." Kidwell v. Eisenhauer, 679 F.3d 957, 967 (7th Cir. 2012) (citations omitted). Here, a significant event separated Smith's protected activity from his termination, namely, COPA's discovery of Smith's coterminous employment at COPA and OCJ, which violated COPA's policies concerning secondary employment. That discovery disrupts any causal link between his protected activity and his termination. Once COPA learned of Smith's secondary employment, Smith would have been, and indeed was, terminated notwithstanding the email chain Verrant provided.[2]

Smith appears to separately argue that Murphy-Aguilu and potentially other City employees knew that Smith served in a leadership role in his union while employed by OCJ. Appellant's Br. at 16; R. 324 at ¶ 52. To the extent Smith argues that he was retaliated against because of his union activities, that argument fails. Union activity is not a protected activity for purposes of a retaliation claim under Title VII or ICRA. See, e.g., Washington v. American Stores Co., No. 98 C 1439,

---

[2] To the extent it is possible to construe Smith's brief as arguing that the discovery of his OCJ employment cannot be an intervening event because he previously resigned from OCJ, that argument should be rejected because it misses the point. It does not matter whether OCJ's internal records correctly indicated that Smith was an OCJ employee; it only matters that OCJ informed COPA that Smith was its employee, and COPA terminated Smith based on that then-uncontested information.

1999 WL 966092, at *6 (N.D. Ill. Oct. 14, 1999), aff'd, 234 F.3d 1275 (7th Cir. 2000);

Hansen v. Runyon, No. 97 C 3672, 1999 WL 311693, at *5 (N.D. Ill. May 13, 1999).

Such a claim also fails because it was not contained in his complaint, which relied

only on his IDHR claim as the basis for his retaliation claim.  See R. 227; see also

E.E.O.C. v. Concentra Health Service, Inc., 496 F.3d 773, 781 (7th Cir. 2007) ("a

plaintiff . . . alleging illegal retaliation on account of protected conduct must provide

some specific description of that conduct"); O'Grady v. Village of Libertyville, 304

F.3d 719, 725 (7th Cir. 2002) (when a "complaint sa[ys] nothing about" a particular

claim, but the plaintiff "trie[s] to introduce the argument at the summary judgment

stage, . . . the district court [is] well within its discretion to rule that the issue ha[s]

not been properly presented").

        In addition to these deficiencies, Smith's only evidence in support of this new

theory is deposition testimony by Murphy-Aguilu that, as Smith's direct supervisor,

he knew Smith held some unknown role in union management at his prior job.

R. 330-1 at 8.  Murphy-Aguilu did not know any specifics about what Smith may

have done in that capacity.  R. 330-1 at 8.  He did not even know that Smith's prior

employment was with OCJ.  R. 330-1 at 8 ("I didn't know specifically what his

previous employment was" but "[m]y understanding was that he was, in some form,

you know, part of the management of the union there.").  Smith, moreover, does not

argue that Murphy-Aguilu had any involvement in the decision to terminate his

employment with COPA, nor did Smith present evidence to contradict Murphy-

Aguilu's testimony that he never told Flowers or Roberts about Smith's prior union

involvement.  R. 330-1 at 8-9.  Rather, Smith speculates that "[i]f Murphy-Aguilu was aware of Smith's protective activities[,] it is possible the other city defendants were as well."  Appellant's Br. at 16.  "[A] party must present more than mere speculation or conjecture to defeat a summary judgment motion."  <u>Weaver v. Champion Petfoods USA Inc.</u>, 3 F.4th 927, 936 (7th Cir. 2021).  Smith's undeveloped arguments relating to his union activities do not provide an alternative basis to save his retaliation claims from summary judgment.

The district court correctly granted summary judgment for the City on Smith's Title VII and ICRA retaliation claims.

## II.  SUMMARY JUDGMENT WAS PROPER ON SMITH'S DEFAMATION CLAIM.

The district court also properly granted summary judgment for Flowers and Murphy-Aguilu on Smith's defamation claim.[3]  To state a defamation claim under Illinois law, "a plaintiff must present facts showing that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages."

---

[3]  Smith does not specify what type of defamation action he is pursuing.  In Illinois, a "defamation action may state a claim either for defamation *per se* (statements so harmful to reputation that damages are presumed) or defamation *per quod* (statements requiring extrinsic facts to show their defamatory meaning)."  <u>Muzikowski v. Paramount Pictures Corp.</u>, 322 F.3d 918, 924 (7th Cir. 2003).  It is likely that Smith is attempting to allege a *per se* defamation claim, because one of the "five categories of statements that are considered defamatory *per se*," is "words that impute a person is unable to perform or lacks integrity in performing her or his employment duties," <u>Green v. Rogers</u>, 234 Ill. 2d 478, 491-92 (2009), and the statement at issue in this case involves the potential basis for the termination of Smith's employment with COPA.  The difference between these types of defamation claims does not change the relevant analysis for the disposition of Smith's claim in this case.

Green v. Rogers, 234 Ill. 2d 478, 491 (2009).  The only statement Smith claims was

defamatory was Murphy-Aguilu's response to TSA's request for "any derogatory

circumstances surrounding [Smith's] separation" from COPA, which was that "my

understanding is [Smith] was terminated" because "he had failed to disclose

secondary employment, however, please refer to Karlo Flowers if you need a more

detailed description of the termination."  R. 309-3 at 73.  This statement is

insufficient to maintain a defamation claim against either Flowers or Murphy-

Aguilu.

### A.     Flowers Made No Statement to TSA.

It is undisputed that Flowers never communicated with anyone at TSA about

Smith, nor did he provide any information to TSA about Smith.  R. 309-2 at 11, 53;

see also R. 325 at ¶ 54.  Accordingly, there is no evidence that Flowers ever "made a

false statement about [Smith]," Green, 234 Ill. 2d at 491, which is a requirement for

defamation.  The district court correctly granted summary judgment for Flowers on

Smith's defamation claim.

### B.     Murphy-Aguilu's Statement to TSA Was True.

Murphy-Aguilu's response to TSA's inquiry about Smith – that his

understanding was that Smith had been terminated because he failed to disclose

secondary employment – was true.  Because a *false* statement is required, it is

axiomatic that "[t]ruth is a complete defense to defamation" and "the burden of

proving falsity rests on the plaintiff."  Haynes v. Alfred A. Knopf, Inc., 8 F.3d 1222,

1228 (7th Cir. 1993).  Moreover, even when "[a] plaintiff may be able to

demonstrate, for example, that a statement is technically false in some way . . . [i]n Illinois, a defendant may then defeat the claim by showing that the statement, although not technically true in every respect, was substantially true." <u>Global Relief Foundation, Inc. v. New York Times Co.</u>, 390 F.3d 973, 982 (7th Cir. 2004). "To establish the defense of substantial truth, the defendant need only show the truth of the 'gist' or 'sting' of the defamatory material." <u>Id.</u> (quoting <u>Cianci v. Pettibone Corp.</u>, 298 Ill. App. 3d 419, 424 (1st Dist. 1998)). "[W]here no reasonable jury could find that substantial truth had not been established, the question is one of law." <u>Cianci</u>, 298 Ill. App. 3d at 424.

  In assessing the truth of Murphy-Aguilu's statement, it is irrelevant whether Smith was, in fact, simultaneously employed by both OCJ and COPA in violation of both employers' policies, or whether he had sent a resignation later to OCJ as he stated.  Rather, it is only relevant whether Murphy-Aguilu understood that the reason COPA terminated him was that he failed to disclose other employment. Roberts, the relevant decision maker at COPA, believed Smith violated COPA policies by maintaining improperly disclosed secondary employment with OCJ. Roberts testified that Smith's failure to disclose such an employment relationship was the basis for her decision to terminate Smith's employment with COPA. R. 309-2 at 5.  Murphy-Aguilu similarly testified that it was "extremely what [he] believed" that Smith was terminated for failure to disclose secondary employment. R. 330-1 at 9.  No evidence in the record undermines either Roberts's or Murphy-Aguilu's testimony.  Specifically, Smith offers no evidence that Murphy-Aguilu –

who Smith admits "was not a decision maker when it came to the termination of his employment," Appellant's Br. 25 – possessed any contrary "understanding" concerning the basis for Smith's termination.  Therefore, Murphy-Aguilu's statement to TSA was true.  At a minimum, the "gist" of his statement was at least "substantially" true, <u>Global Relief Foundation</u>, 390 F.3d at 982, which is enough to defeat a defamation claim.

### C.    Murphy-Aguilu's Statement Was Conditionally Privileged.

Murphy-Aguilu is also entitled to summary judgment because his statement was made in response to an inquiry from Smith's prospective employer.  The statement was thus conditionally privileged, and Smith offers no evidence for a reasonable jury to find that the privilege afforded Murphy-Aguilu's statement is defeated.  Even when statements are defamatory, they "are not actionable if they are protected by privilege."  <u>Mauvais-Jarvis v. Wong</u>, 2013 IL App (1st) 120070, ¶ 70.  Occasions where statements may be conditionally privileged include: "(1) situations in which some interest of the person who publishes the defamatory matter is involved"; "(2) situations in which some interest of the person to whom the matter is published or of some other third person is involved"; and "(3) situations in which a recognized interest of the public is concerned."  <u>Kuwik v. Starmark Star Marketing & Administration, Inc.</u>, 156 Ill. 2d 16, 29 (1993) (quotation marks omitted).  A conditional privilege may be "defeated in circumstances where 1) false statements are made with malice or a reckless disregard for their truth, 2) the statements are not limited in scope, or 3) publication is not limited to proper

parties." <u>Zych v. Tucker</u>, 363 Ill. App. 3d 831, 835 (1st Dist. 2006). "Reckless disregard as to the matter's falseness has been defined in Illinois as publishing the defamatory matter despite a high degree of awareness of probable falsity or entertaining serious doubts as to its truth." <u>Kuwik</u>, 156 Ill. 2d at 24-25 (internal quotation marks omitted).

Murphy-Aguilu's statement to TSA was conditionally privileged because it was made in response to an inquiry from Smith's prospective employer. As this court has explained, "an employer may invoke a conditional privilege to respond to direct inquiries by prospective employers." <u>Delloma v. Consolidation Coal Co.</u>, 996 F.2d 168, 171-72 (7th Cir. 1993); <u>see also</u> <u>Quinn v. Jewel Food Stores, Inc.</u>, 276 Ill. App. 3d 861, 871 (1st Dist. 1995) (holding that "an employer's statements in response to a prospective employer" are "privilege[d] under the second category" described in <u>Kuwik</u>); <u>Restatement (Second) of Torts</u> § 595, cmt. i ("a request by the present or prospective employer for specific information" can be "sufficient to bring it within the privilege").[4]

Smith offers no evidence that would overcome this conditional privilege. As an initial matter, it is uncontroverted both that Murphy-Aguiliu's statement was limited in scope to the specific questions asked by TSA – namely, whether he was aware of "any derogatory circumstances surrounding [Smith's] separation" from the City – and that the statement was sent only to the original TSA representative who contacted Murphy-Aguilu, with Flowers copied. R. 309-3 at 73. Moreover, there is

---

[4] The Illinois Supreme Court has adopted the Restatement (Second) of Torts with respect to conditional privilege for defamation claims. <u>Kuwik</u>, 156 Ill. 2d at 27-28.

no evidence that Murphy-Aguilu possessed actual malice or exhibited a reckless disregard for the truth when communicating with TSA. Although Smith contends that "record evidence suggests that Murphy-Aguilu believed that Smith had not failed to disclose secondary employment to COPA," he never cites any supporting evidence in the record. Appellant's Br. 19. And no such evidence exists. To the contrary, the record establishes without contradiction that Smith was terminated for failing to disclose secondary employment, R. 309-2 at 5, and that Murphy-Aguilu "extremely . . . believed" that Smith was terminated for that reason, R. 330-1 at 9. Murphy-Aguilu's statement, therefore, is not only true, but conditionally privileged too.

**D.     Murphy-Aguilu Is Immune From Liability For His Response to TSA.**

Murphy-Aguilu is also immune from liability pursuant to Section 2-210 of the Tort Immunity Act for any misrepresentations he could have made in responding to TSA's inquiry. Section 2-210 provides that: "A public employee acting in the scope of his employment is not liable for an injury caused by his negligent misrepresentation or the provision of information either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material." 745 ILCS 10/2-210. When this immunity applies, "even if a statement is defamatory, under Illinois law, the defendants would have immunity for their statements made within the scope of their authority." Horwitz v. Board of Education of Avoca School District No. 37, 260 F.3d 602, 617 (7th Cir. 2001) (quoting Klug v. Chicago School Reform Board of Trustees, 197 F.3d 853, 861 (7th

Cir. 1999)).  The law is also clear that when a public employee is acting within the scope of his employment, the "immunity cannot be overcome by a showing of improper motivation or knowledge of the statement's falsity, including malice."  Id. at 618 (internal quotation marks omitted).

Murphy-Aguilu was acting within the scope of his public employment when, in his capacity as Smith's former supervisor and using his City-provided email address, he answered questions concerning Smith's employment with the City. Serving as a professional reference for former employees, as he did for Smith and multiple other former COPA investigators, is a part of his duties as a Supervising Investigator for COPA.  R. 309-2 at 56.  TSA's email to Murphy-Aguilu asked for official information, including Smith's "disciplinary file," which request is plainly addressed toward Murphy-Aguilu in his official capacity, not as a private individual.  See, e.g., Horwitz, 260 F.3d at 617-18 (7th Cir. 2001) (school officials "were acting within the scope of their official duties and authority when they corresponded or spoke with various parents about [a teacher's] absence" and thus accorded "[a]bsolute immunity").  Murphy-Aguilu is immune from liability for his response to TSA concerning Smith's termination.

## III.  SUMMARY JUDGMENT WAS PROPER ON SMITH'S INDEMNIFICATION CLAIM.

Finally, Smith seeks to hold the City liable for indemnification, under a respondeat superior theory, for Flowers's and Murphy-Aguilu's alleged defamation. But because the defamation claims against Flowers and Murphy-Aguilu fail for the reasons discussed above, the City cannot be liable and Smith's indemnification

claim against the City necessarily fails.  <u>See</u> 745 ILCS 10/2-109 ("[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable"); <u>see also</u> <u>Bachenski v. Malnati</u>, 11 F.3d 1371, 1377-78 (7th Cir. 1993) ("when *respondeat superior* is the sole asserted basis of liability against a master for the tort of his servant an adjudication on the merits in favor of either the master or servant precludes suit against the other") (citing <u>Towns v. Yellow Cab Company</u>, 73 Ill. 2d 113, 123-24 (1978)).  Summary judgment for the City on Smith's indemnification claim was therefore sound.

## CONCLUSION

———

For the foregoing reasons, the district court's judgment should be affirmed.

Respectfully submitted,

Corporation Counsel
  of the City of Chicago

<u>s/ Ethan Merel</u>
BY:    ETHAN MEREL
       Assistant Corporation Counsel
       2 N. LaSalle Street, Suite 580
       Chicago, Illinois 60602
       (312) 744-2497
       Ethan.Merel@cityofchicago.org

## CERTIFICATE OF COMPLIANCE

_____

In accordance with Fed. R. App. P. 32(g)(1), I certify that the foregoing brief complies with the type-volume limitation provided by Fed. R. App. P. 32(a)(7)(B)(i) and Circuit Rule 32(c).  This brief contains 6,107 words, beginning with the words "Jurisdictional Statement" and ending with the words "Respectfully submitted" in the Conclusion section, as recorded by the word count of the Microsoft Word word processing system used to prepare the brief.

s/ Ethan Merel
ETHAN MEREL, Attorney

## CERTIFICATE OF SERVICE

_____

I certify that on September 26, 2022, I electronically filed the attached Brief of Defendants-Appellees with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.  I certify that all participants in this appeal are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I further certify that some of the participants in the case are not CM/ECF users.  I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following non-CM/ECF participants:

Jason Smith
3515 W. Cermak
Chicago, IL 60608

s/ Ethan Merel
ETHAN MEREL, Attorney